IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| CLINTON E GREEN, | CV 23-76-BLG-SPW |
| Plaintiff, | |
| vs. | ORDER |
| THOMAS J VILSCACK, Secretary, United States Department of Agriculture, | |
| Defendant. | |

On June 30, 2023, Plaintiff Clinton E. Green, proceeding *pro se*, sued Defendant Thomas J. Vilscack, the Secretary of the U.S. Department of Agriculture, for age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"). (Doc. 1). He alleges that he was discriminated against when the U.S. Department of Agriculture's ("USDA") Animal and Plant Health Inspection Service ("APHIS") did not select him for a position with APHIS's Veterinary Services section. (*Id.*).

Vilscack filed a Motion for Summary Judgment on all Green's claims on July 12, 2024. (Doc. 15). Vilscack argues the Court should grant his motion and enter judgment in his favor because Green cannot demonstrate that his non-selection for the Veterinary Services position was because of his age. (Doc. 16 at 5–14). Vilscack

1

also asserts that Green is not entitled to much of the relief he seeks under the ADEA. (*Id.* at 14–15).

Green responded, arguing that he has provided sufficient evidence to establish a material dispute as to whether APHIS's reason for not selecting him was pretextual. (Doc. 18). Vilscack replied. (Doc. 22).

For the following reasons, the Court grants Vilscack's motion on the issue of the availability of a jury trial and denies the motion on all other issues.

## I.   Background

The Veterinary Services' Veterinary Medical Officer Career Program ("VMOCP") is "a cohort-based Veterinary Medical Officer recruitment, leadership development, and training program for external and internal candidates." (Doc. 10 at 4).   In 2016, Veterinary Services posted a job announcement on the USA jobs website for 17 Veterinary Medical Officer positions through the VMOCP at 17 different locations across the country. (*Id.*).   The job announcement described the VMOCP as "designed to develop forward-thinking and well-trained veterinary medical officers capable of meeting the challenges of serving in leadership positions and promoting the health of America's animals, animal products, veterinary biologics and trade." (Doc. 17-1 at 121).   The announcement explained that the program is a "year-long cohort that":

- Provides in-depth orientation to [Veterinary Services] and APHIS

- Enhances needed job skills by providing 3 weeks of classroom sessions and 15 hours of distance learning modules
- Encourages employees to seek leadership development and supports them in these efforts
- Provides a mentor with a broad-based understanding of APHIS' functions, history and future direction

(Doc. 21 ¶ 15).

To review the applications, the prospective regional supervisors of the eventual new hires would interview the candidates and forward a short, ranked list of their preferred candidates. (Doc. 21 ¶ 9). Then, a panel of high-level agency officials established by APHIS would review the applications and recommendations and make the final decision on who to hire. (*Id.* ¶ 8–9).

On April 6, 2016, Green applied for the Riverton, Wyoming position. (*Id.* ¶ 6). His application reflected that he graduated from Mississippi State University's College of Veterinary Medicine in 1996 and has worked for the USDA for 15 and a half years as a supervisory veterinary medical officer. (Doc. 19-4 at 9–10). For the last year and a half before applying for the position in Riverton, he worked as a veterinary medical officer for the Veterinary Services division of APHIS. (*Id.* at 9). His application described his responsibilities and the experience he gained during his positions with USDA. (*Id.* at 5–7, 9–11).

Of note to this lawsuit, Green's application explains he is "applying for this position because I want to finish my career, and then retire, in the state of Wyoming." (*Id.* at 9). He specifies that he will not ask for moving expenses, and that his wife, a

3

registered nurse, "is chomping at the bit to offer her services at any Native American clinics in the area." (*Id.*).

For the Riverton position, Dr. Michael McDole interviewed the applicants and selected his two top choices. (Doc. 21 ¶ 10). Green was McDole's first choice. (*Id.* ¶ 11). However, the review panel—comprised of Kevin L. Richardson, Rosemary Sifford, Randall Levings, and Thomas Myers, of the Veterinary Services Executive Team (Doc. 19-10 at 4–5) ("Review Panel")—selected McDole's second choice ("Selectee") for the position. (Doc. 21 ¶ 13).

The Selectee's application stated that she anticipated graduating with her veterinary degree from the University of Tennessee in May 2016 (after she applied but before the Review Board assessed her application). (Doc. 19-3 at 2). She also received her Master of Science in Wildlife and Fisheries Science from the University of Tennessee in 2002, and her bachelor's degree from North Georgia College with a biology major in 1996. (*Id.*). As for work experience, the Selectee listed that she had worked, in relevant part, as a terrestrial habitat biologist and wildlife biologist for the Wyoming Game and Fish Department from May 2006 to February 2011 and from January 2005 to May 2006, respectively; a wildlife biologist for an army installation from February 2002 to January 2005; and a wildlife technician for Great Smoky Mountains National Park from May 2001 to February 2002. (*Id.* at 2–3).

Her more recent work experience appears to be summer research positions she completed while pursuing her veterinary degree. (*Id.* at 2).

On August 3, 2016, Green was informed he had not been selected for the position. (Doc. 21 ¶ 14). He filed an employment discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") in November 2016, alleging he was not selected for the position because he was discriminated against on the basis of age. (*Id.*; Doc. 17-1 at 19). He filed this suit in June 2023. (Doc. 21 ¶ 14).

## II.    Legal Standard

### A.    *Summary Judgment*

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if it could affect the outcome of the suit under the governing law. *Id.*

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. To meet this burden, the movant must identify those portions of "'the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing Fed. R. Civ. P. 56(c)(1)(A)). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000). The Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587.

### B.    Pro Se Party

Because *pro se* plaintiffs do not have the benefit of legal counsel, their initial pleadings, "however inartfully pleaded, must be held to less stringent standards" than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal citation omitted). Nevertheless, at summary judgment, the elements plaintiff must prove and plaintiff's burden of proof are not relaxed simply because the plaintiff is appearing *pro se. See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("an ordinary *pro se* litigant, like other litigants, must comply strictly with the summary judgment rules.") (citation omitted).

## III.   Analysis

Under the ADEA, 29 U.S.C. §§ 621 et seq., "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age ... in executive agencies ... shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a).    "A plaintiff alleging discrimination under the ADEA may proceed under two theories: disparate treatment or disparate impact." *Palmer v. United States*, 794 F.2d 534, 536 (9th Cir. 1986).   While the disparate treatment theory posits that a "protected trait (under the ADEA, age) actually motivated the employer's decision," *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993), a claim made pursuant to the disparate impact theory requires an employee to "prove that a facially neutral employment practice had a discriminatory impact on older workers," *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291 (9th Cir. 2000).  Green only argues he was subject to disparate treatment.

To establish an ADEA claim under the disparate treatment theory, a plaintiff suing a federal agency must prove by a preponderance of the evidence that they were "subjected to unequal consideration" and that age was one factor that led to an adverse employment action.  *Babb v. Wilkie*, 589 U.S. 399, 406 (2020) (emphasis added).[1]  At the same time, a federal employee plaintiff must show age was the but-

---

[1] Prior to *Babb*, plaintiffs suing the federal government for age discrimination in employment under the ADEA had to show that age was the but-for cause of the personnel action to maintain their claim. *See Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012).

for cause of the adverse employment action to recover "reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision." *Id.* at 413. Injunctive and "other forward-looking relief" may be granted just upon a showing that the plaintiff was subjected to unequal consideration. *Id.*; *see also Barnes v. Saul*, 840 F. App'x 943, 945 n.1 (9th Cir. 2020) (quoting *Babb*, 589 U.S. at 414) ("Injunctive and "other forward-looking relief" may be granted under a less demanding standard" than the but-for test); Ninth Cir. Jury Instructions Comm., Manual of Model Civ. Jury Instructions, at 298–99 (2024) (Model Civ. Jury Instruction 11.11, comment) (describing *Babb*'s impact on the standard federal employees must meet to succeed on a disparate impact theory under the ADEA).

A plaintiff may present direct or circumstantial evidence to prove their claim. Green claims to have presented both direct and indirect evidence. In a case where the plaintiff "presented both some direct evidence and some circumstantial evidence, it is most appropriate to consider the propriety of summary judgment under the *McDonnell Douglas* framework." *France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Under the *McDonnell Douglas* three-step framework, a plaintiff must first establish a prima facie case of discrimination. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). To prove a prima facie case of discrimination

in the context of a failure to hire, a plaintiff must show: (1) they were at least 40 years old at the time of the alleged discrimination; (2) they were subject to an adverse employment action; (3) they were otherwise qualified for the position; and (4) after they were rejected, a substantially younger applicant was selected. *See id.*; *E.E.O.C. v. Timeless Invs., Inc.*, 734 F. Supp. 2d 1035, 1062 (E.D. Cal. 2010); *see also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996) ("The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age .... [T]he fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.").

If the plaintiff succeeds, the burden then shifts to the employer "to articulate a legitimate, non-discriminatory reason for its adverse employment decision." *Diaz*, 521 F.3d at 1207. If the employer succeeds, then the burden shifts back to the plaintiff to demonstrate that their employer's reason for the adverse employment decision is a pretext for a motive which is discriminatory. *Id.*

On summary judgment, the plaintiff's burden at the third stage of the *McDonnell Douglas* analysis only is "to demonstrate that there is a material genuine issue of fact as to whether the employer's purported reason is pretext for age

discrimination." *Shelley*, 666 F.3d at 608.[2]  Then, at trial, they must carry their burden to satisfy either the but-for or unequal consideration test, depending on the requested remedy/remedies. *Babb*, 589 U.S. at 413.

At the first step of the *McDonnell Douglas* framework, Vilscack concedes that Green can establish a prima facie case of discrimination. (Doc. 16 at 6).[3]  Green also seems to concede that Vilscack has provided a non-discriminatory reason for Green's non-selection—that the Review Board preferred the Selectee's experience—as his brief focuses almost entirely on pretext. (*See* Doc. 18 at 8 ("This is a prime example of pretext."); *id.* at 9 ("It is a sure sign of pretext when a given reason is subjective and arbitrary.")).  As such, the Court will address only whether Green has met his burden "to demonstrate that there is a material genuine issue of fact as to whether the employer's purported reason is pretext for age discrimination." *Shelley*, 666 F.3d at 608.

---

[2] This portion of *Shelley* appears to be unaffected by *Babb*, since *Shelley* applied the *Babb* standard at the summary judgment, just not at trial. *See* 666 F.3d at 608.

[3] In a footnote, Vilscack states that "it is unclear whether an age difference of 10 years renders the selectee 'substantially younger' than Plaintiff." (Doc. 16 at 6 n.2).  Vilscack cites a Ninth Circuit case from 2008, *Diaz*, which held that a nine and a half years' average age difference between the workers hired and those laid off was insufficient to establish a prima facie case of age discrimination. 521 F.3d at 1209 (citing *Harley v. Wis. Bell Inc.*, 124 F.3d 887, 893 (7th Cir. 1997); *O'Connor*, 517 U.S. at 313).  However, since *Diaz*, the Ninth Circuit has held that "an average age difference of *ten years or more* between the plaintiff and [the selectee] will be presumptively substantial, whereas an age difference of less than ten years will be presumptively insubstantial." *France*, 795 F.3d at 1174 (emphasis added).  Because Green is ten years older than the Selectee, the age difference between them is presumptively substantial.

A.    *Green's Evidence of Pretext*

A plaintiff "may demonstrate pretext either directly by persuading the court that a discriminatory reason likely motivated [the employer] or indirectly by showing that [the employer's] proffered explanation is unworthy of credence." *Diaz*, 521 F.3d at 1212 (internal citation omitted). "Direct evidence is evidence 'which, if believed, proves the fact [of discriminatory animus] without inference or presumption.'" *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998)). Direct evidence typically consists of clearly discriminatory statements or actions by the employer. *See, e.g., Godwin*, 150 F.3d at 1221 (supervisor stated he "did not want to deal with [a] female").

"Circumstantial evidence, in contrast, is evidence that requires an additional inferential step to demonstrate discrimination." *Coghlan*, 413 F.3d at 1095. One form of circumstantial evidence is a showing that the "employer's proffered explanation for the adverse action is 'unworthy of credence.'" *Id.* (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)). "Internal inconsistencies and "shifting explanations" are examples of forms of indirect evidence that may tend to show pretext. *Timeless Invs., Inc.*, 734 F. Supp. 2d at 1063; *see also Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (evidence of pretext should show "such weaknesses, implausibilities, inconsistencies, incoherencies or

contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence"). "Shifting reasons" are "fundamentally different justifications for an employer's action [that can] give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that neither of the official reasons was the true reason." *Culver v. Qwest Commc'ns. Corp.*, 306 F. App'x. 403, 405 (9th Cir. 2009). However, "separate reasons offered by an employer are not considered 'shifting' if they are not 'incompatible.'" *Id.*; *see Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996). That is, pretext is not inferred "from the simple fact that [the employer] had two different, although consistent, reasons" for its conduct. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 661–62 (9th Cir. 2002).

"The distinction between direct and circumstantial evidence is crucial, because it controls the amount of evidence that the plaintiff must present in order to defeat the employer's motion for summary judgment." *Coghlan*, 413 F.3d at 1095. When the evidence is direct, "very little" is required to survive summary judgment, but when the evidence is indirect, such evidence "must be specific and substantial to defeat the employer's motion for summary judgment." *Id.*

Vilscack asserts the Court should evaluate Green's evidence against the strong presumption that Green's non-selection was non-discriminatory under the same

actor inference. (Doc. 16 at 13). The Court will first discuss whether the inference applies, then evaluate Green's evidence.

### 1. Same Actor Inference

The same actor inference dictates that "'where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action.'" *Coghlan*, 431 F.3d at 1096 (quoting *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270–71 (9th Cir. 1996)). A plaintiff must "muster the extraordinary strong showing of discrimination" to defeat the same actor inference on summary judgment. *Id*. at 1097.

Vilscack argues the same actor inference applies here because APHIS hired Green as a veterinary medical officer in Illinois just 18 months before APHIS did not choose him for the VMOCP job and because he was at least 50 years old at the time of both events. (Doc. 16 at 13). Green responds that the same actor inference does not apply because he was hired by a different APHIS office in a different state by different leadership. (Doc. 18 at 19). On reply, Vilscack asserts that Green "espouses too narrow a view of the same actor inference" because "courts across the country have extended [the inference] beyond instances in which the exact same person took both an initial favorable and subsequent adverse employment action against a plaintiff." (Doc. 22 at 6 (citing *Campbell v. All. Nat'l Inc.*, 107 F. Supp.

13

2d 234, 249–50 (S.D.N.Y. 2000); *Nieto v. L&H Packing Co.*, 108 F.3d 621, 622–23

(5th Cir. 1997); *DeJarnette v. Corning Inc.*, 133 F.3d 293, 295–96, 298 (4th Cir.

1998); *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006))).

The Court agrees with Vilscack that the same person does not need to make

the adverse employment decision for the same actor inference to apply. However,

the Court does not agree that the same actor inference applies here given the

complete lack of connection between the people in Illinois who hired Green and the

Review Board considering him for the position in Wyoming. The rationale behind

the same actor inference is that it would be irrational for an employer to hire a person

despite their protected status then fire them shortly after because of their protected

status. *Bradley*, 104 F.3d at 270 (quoting *Proud v. Stone*, 945 F.2d 796, 797 (4th

Cir. 1991) ("From the standpoint of the putative discriminator, it hardly makes sense

to hire workers from a group one dislikes (thereby incurring the psychological costs

of associating with them), only to fire them once they are on the job."). This

justification does not apply when the persons who hired the plaintiff are so

disconnected from the persons who executed the adverse employment decision

because the irrationality that comes from the contradictory decision would not exist.

The cases Vilscack cites do not undermine this distinction. Confusingly, three

of the cases he cites involve the same person/persons hiring and firing the plaintiff.

*See Campbell*, 107 F. Supp. 2d at 249 (finding that the same two people who hired

14

the plaintiff fired her); *Nieto*, 108 F.3d at 624 ("Moreover, the supervisor who recommended that [the company] hire [the plaintiff] was the same supervisory employee who issued the authoritative recommendation to terminate [the plaintiff's] employment."); *Antonio*, 458 F.3d at 1183 ("Most of the same individuals … who decided to terminate Antonio for job abandonment had also hired her twice, fully aware of her race and national origin."). In the other case cited by Vilscack, whether the same person hired and fired the plaintiff is not entirely clear because the court there only describes the company—Corning, Inc.—hiring the plaintiff, not a specific person. *DeJarnette*, 133 F.3d at 295–96. It appears, though, it was the same person, as the court at one point writes that "[b]oth Schrock and Bardon knew that [the plaintiff] was pregnant before [the plaintiff] even started working for Corning, and Bardo was involved in the ultimate decision to discharge" the plaintiff. *Id.* at 296.

Because no evidence shows any overlap or connection among the persons who hired Green in Illinois and the Review Board members who did not select Green for the position in Wyoming, the same actor inference does not apply here.

### 2. *Direct Evidence*

Having determined that the same actor inference does not apply, the Court moves to its evaluation of Green's evidence.

In his opening brief, Vilscack contends that Green "has no direct evidence of age discrimination[.]" (Doc. 16 at 5). Green responds that he has presented direct

evidence, specifically Review Board member Myers's first two stated reasons for not selecting Green: that "Green's resume indicated that he graduated from veterinary school over 20 years ago" in comparison to the selectee who graduated from veterinary school the month prior, and that Green's application indicated, "he is applying for this job because '[Green] want[s] to finish [his] career and then retire in the State of Wyoming.'" (Doc. 18 at 11–12 (citing Doc. 19-8 at 2)).[4]

As to the first statement, Green argues that his resume does not mention how many years Green has been a veterinarian or how many years have passed since he graduated from veterinary school, so "Myers had to do the math." (*Id.* at 11).  Green posits that "[i]t was so important for Myers to differentiate the applicants based on their perceived ages, that he did the math. Myers then used the lower number, i.e. younger, to justify the panel's selection." (*Id.* at 12).  As to the second statement, Green argues that "Myers is admitting that the mere mention of some undated future retirement is enough to justify the hiring" of what Myers perceived as the younger applicant based on the Selectee's graduation date. (*Id.*).

Vilscack does not address this evidence in reply.

As an initial matter, the Court finds the first statement is indirect evidence because evidence of Green's and the Selectee's different graduation dates "requires

---

[4] Green represents that because Myers no longer works for APHIS, he did not submit an affidavit about his reasons for not selecting Green and selecting the Selectee, as the other Review Board members did. (Doc. 18 at 11).  Vilscack does not contest this.  Myers's statements in the record are from emails he sent contemporaneously with the Review Board's decision.

an additional inferential step to demonstrate discrimination." *Coghlan*, 413 F.3d at 1095. The Selectee's resume indicates that, though she only graduated from veterinary school the month before the Review Board assessed her application, she had received her Bachelor of Science in 1996 and Master of Science in 2002. (Doc. 19-3 at 2). Receiving her veterinary degree and becoming a veterinarian thus can be characterized as a second career of someone who is older, unlike someone whose resume indicated they had received their veterinary degree right after their bachelor's degree. Myers's first statement therefore cannot prove discriminatory animus without inference or presumption and is indirect evidence the Court will consider in the next section of the order.

Myers's second statement regarding his concerns about Green retiring constitutes direct evidence of age discrimination under *Shelley*, 666 F.3d at 609–610. In *Shelley*, the persons who made the at-issue hiring decision requested the projected retirement dates for employees in their districts and divisions, which included the plaintiff, during the hiring period. *Id.* at 609. The court considered this fact to be direct evidence of age discrimination. *Id.* The court also held that the evidence was sufficient to defeat summary judgment because "a fact-finder could infer from this that they considered age and projected retirement relevant to the hiring decisions." *Id*; *see also id.* at 610 ("It raises an inference that they considered this information relevant to their decisions.").

Applying *Shelley*, the Court finds that Myers's statement about Green's retirement is direct evidence and supports an inference that APHIS's reason for not selecting Green was a pretext for age discrimination. In fact, this evidence is even more compelling than that in *Shelley*, since the decisionmaker's inquiry in *Shelley* about the retirement dates was made only concurrent with, not explicitly in the interest of, their hiring decision. Here, Myers explicitly stated that Green's mention of retirement was a reason for not selecting Green.

Vilscack generally argues that courts have rejected the notion that "succession planning, or planning for the agency's future is per se age discrimination[.]" (Doc. 16 at 11–12 (citing *Ray v. Tucson Old Pueblo Credit Union*, 228 F. App'x 682, 683 (9th Cir. 2007); *Edwards v. Cargill, Inc.*, No. 03:10-CV-1460, 2012 WL 1605568, at *5 (D. Or. May 8, 2012); *Kelly v. Stafford Tractor Co.*, No. 1:07-CV-0089, 2009 WL 425356, at *11 (N.D. Ga. Feb. 19, 2009); *Boston v. Blue Cross and Blue Shield of Kan., Inc.*, 431 F. App'x. 763, 767 (10th Cir. 2011); *Johnson v. Harvey*, No. 4-05-CV-01773, 2007 WL 201225, at *4 (E.D. Ark. Jan. 24, 2007))). Green does not specifically address this argument.

Reading the cases cited by Vilscack, it seems that only discussions about succession planning made outside the context of the adverse employment decision are not evidence of age discrimination. *See Edwards*, 2012 WL 1605568, at *3, *5 (rejecting the plaintiff's evidence of management generally encouraging succession

planning and the training of younger employees during meetings); *Boston*, 431 F. App'x at 766–67 (rejecting plaintiff's evidence of a "non-specific observation" by management that, with the new promotion that the plaintiff was not given, the company was "younger," particularly since the plaintiff did not express interest in the promotion and indicated he planned to retire).[5] That is not the case here, as Myers flagged Green's retirement in the context of his decision to not select him for the position.

In *Ray*, the Ninth Circuit rejected the plaintiff's argument that outside auditors' inquiry into her retirement plans was direct evidence of bias because the company's board of directors, not the auditors, ultimately fired the plaintiff and because the auditors made the inquiry three years prior to the plaintiff's termination. 228 F. App'x at 683. Though the board of directors reviewed the auditors' report that contained the plaintiff's retirement age and discussed it at the termination meeting, the evidence showed the board's discussion of her retirement age was focused on whether the plaintiff was going to retire anyway, such that they would

---

[5] Considering all the facts in *Boston* further underscore its inapplicability. There, the plaintiff had told his direct supervisor in January 2007 that he planned to retire the next year when he turned 60. *Id.* at 764. In October 2007, the plaintiff's direct supervisor promoted another man to an open vice-president position. *Id.* The plaintiff did not argue "that he expressed interest in the position[.]" *Id.* In March 2008, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging he was not selected for the promotion because of his age. *Id.* at 765. In April 2008, when the plaintiff turned 60, he retired with full benefits. *Id.* at 764. Those facts, which demonstrated the plaintiff's disinterest in the position that he then alleged he did not receive because he was discriminated against, do not exist here.

not have to terminate her. Order at 11, *Ray v. Tucson Olde Pueblo Credit Union*, 3:03-cv-192 (Mar. 24, 2005), ECF No. 89. The board's discussions about why they wanted to terminate her, instead, focused on the auditors' poor review of the plaintiff's performance. *See id.* at 4–5. In contrast, here, one of the decisionmakers noted that Green's retirement comment impacted his non-selection of Green.

At first glance, *Johnson* provides the most support for Vilscack. In *Johnson*, the decisionmaker admitted to asking the plaintiff's age at the beginning of the interview and responding that age 51 was "at the age where your body starts to break down." 2007 WL 201225, at *5. The decisionmaker also had previously made comments that the Army Corps needed "younger blood." *Id.* Despite this, *Johnson* held that the record did not support an inference of age discrimination for two reasons: (1) The Eighth Circuit had held that "asking a potential employee how long he intended to work if hired is not sufficient to constitute direct evidence of age discrimination"; and (2) the plaintiff was not approaching retirement age because, at 51, he still had 11 more years to qualify for retirement benefits and was not asked about his retirement plans. *Id.* (citing *Lee v. Rheem Mfg. Co.*, 432 F.3d 849 (8th Cir. 2005)). This reasoning undermines its applicability to Green's case. First, the Eighth Circuit's reasoning in *Lee* seems to contradict with *Shelley*. Second, Green's evidence explicitly references his retirement, not just his age.

Last, *Kelly* mostly supports Green's position.  In *Kelly*, the plaintiff raised several comments made by the company's management as direct proof of discrimination, including the chairman of the board asking the plaintiff repeatedly when he planned to retire and if he "found a young man to become his replacement." 2009 WL 425356, at *9.  The CEO also said during a management meeting that "they needed to attract young qualified managers to their companies." *Id.*  *Kelly* held that this evidence was indirect (though this holding contradicts *Shelley* and thus is unpersuasive).  *Kelly* then held that, though the ADEA does not "prevent a company from succession planning ... the comments of Defendant's upper management went beyond mere planning into the direct suggestion that the manager should be looking for younger employees, and managers who were planning to retire should select someone younger to take their positions." *Id.*  Certainly the evidence here is less compelling than in *Kelly*, but the court's emphasis on retirement in *Kelly* and Myers's emphasis here nonetheless supports an inference that Green's non-selection was motivated by bias, not succession planning.  Additionally, when the evidence is direct, a plaintiff needs "very little" to defeat summary judgment. *Coghlan*, 413 F.3d at 1095.  Green's evidence meets that threshold.

For these reasons, the evidence that Myers did not select Green because of Green's statement about retiring supports an inference that Green's non-selection was a product of age discrimination.  Summary judgment is improper.

21

### 3. Indirect Evidence

Green presents three categories of indirect evidence to show pretext: (1) the Review Board "deviated from the norm" because Green's case was the only one of the 17 VMOCP positions in which the Review Board did not accept the selecting official's recommendation; (2) the Review Board "lied to cover their tracks"; and (3) the reasons given by the Review Board members, "while sounding good, were not the real reason for their decision." (Doc. 18 at 2).

As an initial matter, Vilscack argues Green's evidence amounts only to Green's "own subjective analysis of his experience and qualifications versus those of the selectee" that does not demonstrate pretext under the law. (Doc. 22 at 3–4).[6] The Court does not agree with this characterization. Rather, Green seems to make these comparisons in order to show that the reasons APHIS did not select him for the VMOCP are not credible and are pretext for age discrimination.

As to Green's assertion that the Review Board deviated from its norm by not adopting the selecting official's recommendation to hire Green, Vilscack responds that the Review Board was not bound to the selecting official's recommendation and

---

[6] To the extent Green makes the argument, the Court agrees with Vilscack that it is unsuccessful because Green has not shown that he is "clearly superior" to the Selectee. (*See* Doc. 22 at 4 (citing *Hercules v. Dep't of Homeland Sec.*, No. C 07-0270, 2008 WL 1925193, at *18 (N.D. Cal. Apr. 29, 2008))). Though Green has more experience with APHIS and as a veterinarian, he is not clearly superior in his qualifications given the VMOCP's focus on professional development. The Court still would deny summary judgment because Green presented sufficient direct evidence to create a dispute of fact.

that their decision was a "product of determining that [Green] was not the best candidate" for the position. (Doc. 22 at 3).

The Court finds that the Review Board's deviation from its pattern of accepting the selecting official's recommendation is evidence of an inconsistency, given that nothing in Green's application so obviously demonstrated that he was unqualified or less qualified than the Selectee. Certainly, the Review Board could have determined that Green was not the best candidate, but the statistical anomaly in his case presents, at minimum, an inconsistency. On its own, this evidence would be insufficient to overcome summary judgment.

As to Green's argument that the Review Board "lied to cover their tracks," Green cites two examples. Green first points out that an APHIS official, LaWanda Gamble, emailed the Review Board with a scorecard containing four criteria on which to assess the applicants on a 0 to 5 scale. (Doc. 19-5 at 3; Doc. 19-10 at 5). Review Board member Sifford's notes from a conference call with Gamble and the other Review Board members about the application review process confirm this. (Doc. 19-6 at 3 ("0-5 rating scale on 4 competencies")). Further, Gamble told Green that he was evaluated according to those four criteria. (Doc. 19-9 at 2). At the same time, each of the three Review Board members who submitted affidavits declared that they "did not rate or score the applicants" and "did not have a written checklist or structured formula" in evaluating the candidates. (Doc. 19-11 at 5; Doc. 19-12 at

5; Doc. 19-13 at 5). The criteria that the Review Board members swore they used only included one of the four criteria in Gamble's scorecard (public service motivation). Vilscack responds that Green "has produced no evidence that the review panel members were bound to strictly follow a selection checklist." (Doc. 22 at 3 n.1).

Green's evidence concerning the scorecard and applicant review criteria constitutes an internal inconsistency. Though there is no evidence the Review Board members were required to use the scorecard and criteria sent by Gamble, the fact that the Review Board members swore they did not even *have* a written checklist of a structured formula, despite clear evidence to the contrary, is internally inconsistent. That Green was told he was evaluated pursuant to the criteria, but was actually not, underscores the inconsistency.

Second, Green notes two contradictions in Review Board member Levings's explanation of why he did not choose Green. Levings stated he did not select Green because of a statement in his "resume" that he would like to go to Wyoming and retire, which Green argues is a "lie" because the mention of retirement is not in his resume. Any contradiction this presents is immaterial because Green's application materials mention the retirement, even if it is not in his resume. (*See* Doc. 19-4 at 9). Levings also stated Green was not prepared to move and relocate, which Green argues is not supported by his resume and job application. (Doc. 18 at 6–7). On this

point, the Court agrees and, like Green, finds this conclusion "bizarre" given Green's primary reason for wanting the job was so he could move to Wyoming. (*See* Doc. 19-4 at 9). Though not enough on its own to raise an inference of age discrimination, this contradiction certainly is proper for the Court to consider.

Green last presents various evidence to support his argument that the reasons given by the Review Board for choosing the Selectee lack credence and are pretext for age discrimination. The Court finds that each evinces a contradiction and/or internal consistency within the Review Board's decision and, together with the other circumstantial evidence, establishes specific and substantial evidence of age discrimination.

Each Review Board member that submitted an affidavit explained they chose the Selectee, in part, because she had pursued additional education beyond her veterinary degree. (*See* Doc. 19-11 at 5; Doc. 19-12 at 6; Doc. 19-13 at 5). They each defined "advanced degrees" as "educational pursuits *after* graduating with a veterinary degree." (*See* Doc. 19-11 at 5; Doc. 19-12 at 5; 19-13 at 5) (emphasis added). However, the Selectee did not pursue additional education after her veterinary degree. Instead, her resume reflects that she received her Master of

Science 14 years prior in 2002. (*Id.*).[7] This is the most blatant internal contradiction that has little plausible explanation based in the current record other than pretext.

Additionally, the Review Board members swore that Green had good field experience, but that "field experience was not the emphasis" for their selection. (Doc. 19-11 at 5; Doc. 19-12 at 5; Doc. 19-13 at 4). However, Myers's email states he chose the Selectee, in part, because she had a ten-year career as a wildlife biologist and was employed by the State of Wyoming for six years. (Doc. 19-8 at 2). He characterized her experience as "invaluable in dealing with" Greater Yellowstone Area issues. (*Id.*). Read in a light most favorable to Green, Myers's statement indicates that, though Myers found the Selectee's field experience so compelling as to choose her for the position, he and the Review Board did not consider Green's field experience relevant. This inconsistency supports an inference of pretext.

Less compelling, but still relevant considering the totality of circumstantial evidence, are the Review Board members' emphasis on the Selectee's interest in public service. Green's and the Selectee's resumes, read in a light most favorable to Green, do not show the selectee is "clearly stronger," as Green has 15 years in public service and the Selectee only has 10 years. The Court acknowledges that public service can be measured in more ways than just duration. However, without further

---

[7] In fact, it was impossible for her to have pursued additional education after receiving her veterinary degree because, at the time she applied, she had not graduated from veterinary school. (Doc. 19-3 at 2 (reflecting an "anticipated" graduation date of May 2016)).

explanation from the Review Board, the Court finds this inconsistent statement sufficient to create a dispute of fact on summary judgment.

Of course, some portions of the Review Board members' explanations for choosing the Selectee are consistent. Their affidavits certainly are consistent, given they are identical. On summary judgment, though, Green only needs to show a dispute of fact as to whether APHIS's reasons for not selecting him are pretextual. Considering the circumstantial evidence in its totality, he has met this burden.

B.    *Requested Relief*

Vilscack last argues that, even if Green survives summary judgment and is successful at trial, certain relief he requested is not available under the ADEA. (Doc. 16 at 14).

In his complaint, Green requests the following relief:

- A retroactive promotion with back pay, starting from July 1, 2017, to a field position at the GS-13 level in the State of Wyoming, with a remote duty station of the plaintiff's choosing;
- Compensatory damages in the amount of all Illinois and Montana state income taxes paid by Green and Green's wife for the tax years of 2016 to current;[8]
- Injunctive relief restraining future acts of discrimination by Vilscack;
- "[D]eclaratory relief in the form of an email declaration to everyone in Veterinary Services, with wording approved by Plaintiff, that Defendant's practices as alleged herein are illegal because they discriminate on the basis of age";

---

[8] Green presumably requests this because Wyoming does not have state income tax. *See* Micah Bloomfield, Evan Hudson, & Mitchell Snow, *Real Estate Investment Trusts* § 16:51 (August 2021) ("Wyoming does not impose an income tax[.]").

- Compensatory damages for all moving expenses incurred by Green to relocate from his current residence to the new duty station in Wyoming;
- A government-owned vehicle upon Green's arrival in Wyoming of the type and trim level approved by Plaintiff; and
- All other relief as the Court may deem just, proper, and equitable.

(Doc. 1 at 20–21).

Vilscack specifically asserts that Green cannot recover compensatory damages under Ninth Circuit's decision in *Stilwell v. City of Williams*, 831 F.3d 1234, 1247 (9th Cir. 2016) (citing *C.I.R. v. Schleier*, 515 U.S. 323, 326 (1995)). (Doc. 16 at 14). Vilscack also argues Green cannot obtain reinstatement, backpay, or other forms of relief related to the end result of the employment decision because he "can never prove that age discrimination was the *but-for cause* of APHIS's hiring decision[.]" (*Id.* at 14–15 (citing *Babb*, 589 U.S. at 413) (emphasis in brief)).

In response, Green argues he is entitled to the relief that would put him in "the position that [he] would have occupied if the wrong had not occurred," which his requested relief encompasses. (Doc. 18 at 19).

As an initial matter, Vilscack's argument that compensatory damages are not available under the ADEA is incorrect. Under the Supreme Court's decision in *Babb*, a federal ADEA plaintiff *can* obtain compensatory damages. *Babb*, 589 U.S. at 413. In order to do so, the plaintiff must demonstrate that age discrimination was the but-for cause of their non-selection, rather than the lower standard of proof applied to injunctive and forward-looking relief. *Id.* ("Thus, § 633a(a) plaintiffs

28

who demonstrate only that they were subjected to unequal consideration cannot obtain reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision. To obtain such remedies, these plaintiffs must show that age discrimination was a but-for cause of the employment outcome."). Confusingly, Vilscack quotes this portion of *Babb* just two sentences after stating that compensatory damages are not available under the ADEA but omits with an ellipses the phrase "compensatory damages." (Doc. 16 at 14–15).

*Stilwell* does not support Vilscack's position on compensatory damages, either. The *Stilwell* court wrote, "ADEA plaintiffs may recover lost wages and liquidated damages from employers"—aka economic compensatory damages—"but may not recover damages for emotional pain and suffering"—aka noneconomic compensatory damages. 831 F.3d at 1247; *see also* Restatement (Second) of Torts §§ 903, 905, 906 (describing the differences between compensatory damages for pecuniary and nonpecuniary harm). Green does not request noneconomic compensatory damages, only economic compensatory damages.

In sum, Green can recover for reinstatement, backpay, economic compensatory damages, and "other forms of relief related to the end result of [the] employment decision." *Babb*, 589 U.S. at 413; *Stilwell*, 831 F.3d at 1247. To obtain such relief, he must show at trial that age was the but-for cause of his non-selection. *Babb*, 589 U.S. at 413. He may obtain injunctive and other "forward-looking" relief

29

under a lesser standard. *Id.* He cannot recover noneconomic compensatory damages. *See Stilwell*, 831 F.3d at 1247. Since Green does not ask for noneconomic compensatory damages and has put into dispute whether age was the but-for cause of his non-selection, the Court denies Vilscack's motion on the issue.

C. *Jury Trial*

Vilscack last argues that Green is not entitled to a jury trial. (Doc. 16 at 14). Green does not respond to this argument.

A "plaintiff in an action against the United States has a right to trial by jury only where Congress has affirmatively and unambiguously granted that right by statute." *Lehman v. Nakshian*, 453 U.S. 156, 168 (1981). Congress did not do so with respect to age discrimination claims against federal agencies under the ADEA, 29 U.S.C. § 633a. *Id.* Accordingly, Green is not entitled to a jury trial and his request for one is denied. Vilscack's motion on this issue is granted.

## IV.  Conclusion

IT IS SO ORDERED that Defendant Thomas J. Vilscack's Motion for Summary Judgment (Doc. 15) is GRANTED as to the jury trial issue and DENIED on all other issues.

DATED the ___9th___ day of September, 2024.

_Susan P. Watters_
SUSAN P. WATTERS
U.S. DISTRICT JUDGE