IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| CLINTON E. GREEN,<br><br>Plaintiff,<br><br>vs.<br><br>BROOKE L. ROLLINS, Secretary,<br>U.S. Department of Agriculture,<br><br>Defendant. | CV 23-76-BLG-SPW<br><br>FINDINGS OF FACT,<br>CONCLUSIONS OF LAW,<br>AND JUDGMENT |

## INTRODUCTION

In November 2016, Plaintiff Clinton E. Green filed charges of age discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On May 1, 2023, the EEOC issued a final decision denying Dr. Green's claims.

Dr. Green filed a Complaint in this Court on June 30, 2023. In the Complaint, he asserted that the United States, acting through the Department of Agriculture, Animal and Plant Health Inspection Service ("APHIS"), discriminated against him for his age when he was not selected for a position with APHIS's Veterinary Services section. (Doc. 1). The Government filed a Motion for Summary Judgment against Dr. Green's claims on July 12, 2024. (Doc. 15). The Cout denied the Government's motion in all respects except to Dr. Green's request for a jury trial.

1

This matter was tried on July 21, 2025, before Judge Susan P. Watters, sitting without a jury. Dr. Green appeared and proceeded pro se. He was the sole witness to testify in his case in chief. The Government appeared and was represented by John M. Newman of the United States Attorney's Office. The Government introduced witness testimony from three members of the Veterinarian Medical Officer Career Program's Review Panel ("Review Panel" or "Panel"), who made the final decision not to hire Dr. Green. Having heard the evidence and reviewed relevant documents submitted by the parties, the Court makes the following findings and conclusions pursuant to Rule 52(a) of the Federal Rules of Civil Procedure:

## FINDINGS OF FACT

### *Jurisdiction*

1. Dr. Green has sued the Federal Government, through APHIS Veterinary Services, alleging age discrimination when the agency chose a younger individual for a position within the Veterinary Medical Officer Career Program.

2. At the time this action commenced, Dr. Green resided in Custer County, Montana.

### *Background*

3. Leading up to 2016, Veterinary Services suffered from a shortage of individuals interested in and willing to hold high ranking leadership positions.

2

There were numerous vacancies in those positions and not enough incoming candidates to fill those vacancies.

4. To remedy this personnel shortage, Veterinary Services established the Veterinary Medical Officer Career Program ("VMOCP"). (Doc. 46-1). The program was a "cohort-based Veterinary Medical Officer recruitment, leadership development, and technical training program for external and internal candidates." (*Id.* at 1).

5. The program aimed to attract individuals with leadership qualities, such as an interest in Veterinarian Services' national strategic direction, an intent to pursue future leadership positions, and flexibility to relocate for leadership roles. According to testimony at trial, it is common for personnel to relocate if selected for high-ranking regional or national positions.

6. Once selected for the program, the VMOCP participants were required to attend three weeklong pre-approved training programs. The VMOCP did not guarantee participants a high-ranking or executive leadership role, but the program helped participants by: identifying strengths and weaknesses in their leadership styles, encouraging and supporting participants to seek leadership development opportunities, and providing participants with mentors who had a broad understanding of "APHIS'[s] functions, history, and future direction." (*Id.*).

3

7. As part of the VMOCP, Veterinary Services posted an external-facing announcement on USAJOBS for 17 Veterinary Medical Officer positions in April 2016. (Doc. 46-4). One position was located in Riverton, Wyoming.

8. In May 2016, Veterinary Services announced the VMOCP positions internally to its Veterinary Medical Officer staff and invited qualified employees at the GS-11 through GS-14 grade level to apply. (Doc. 46-7). The announcement stated that the applicants, if selected, would "remain in their current duty station/position." (*Id.* at 1).

9. An internal candidate could apply externally or internally. If a candidate applied externally, they could apply for one or more of the 17 posted locations. If a candidate applied internally, they essentially applied for the position at which they were already located. All successful candidates, however, would participate in the VMOCP, no matter their location.

10. In 2016, Dr. Green worked as a GS-12 APHIS Veterinary Medical Officer in Mount Vernon, Illinois. On April 6, 2016, Dr. Green applied as an external candidate for the Riverton, Wyoming VMOCP position. (Doc. 46-5). He did not submit an internal application, though he was qualified.

11. Hundreds of candidates applied externally to the 17 positions. After Human Resources reviewed and filtered applications, a regional selecting official for each location received and conducted candidate interviews. Following the

4

interviews, the selecting official nominated two candidates, ranked them as first and second choice, and forwarded their application materials to the Review Panel. The Review Panel made the final selection for each of the 17 locations.

12. The VMOCP Review Panel was comprised of four members—Dr. Kevin L. Richardson, Dr. Rosemary Sifford, Dr. Randall Levings, and Dr. Thomas Myers. Dr. Sifford, Dr. Levings, and Dr. Myers testified at trial.

*Age Discrimination Claim*

13. Dr. Green was born in May of 1964 and was 52 years of age when the Review Panel made its selection.

14. In 2016, Dr. Green interviewed with Dr. Michael McDole, the regional selecting official for the Riverton, Wyoming position.

15. Dr. McDole ranked Dr. Green as his first choice, and Dr. Carrie Dobey as his second choice. Dr. McDole forwarded the candidates' application materials, with his rankings, to the Review Panel. Neither candidates' application materials identified their age. (Docs. 46-5, 46-6).

16. Dr. Green's application reflected that he graduated from Mississippi State University's College of Veterinary Medicine in 1996 and had worked for the USDA for 15 and a half years as a supervisory Veterinary Medical Officer.

(Doc. 46-5 at 11, 13). His application described his responsibilities and the experience he gained during his positions with USDA. (*Id.* at 4–6, 11–13).

17. Of note to this case, his application stated: "I am applying for this position because I want to finish my career, and then retire, in the state of Wyoming." (*Id.* at 11).

18. Dr. Dobey's application stated that she anticipated graduating with her veterinary degree from the University of Tennessee in May 2016. (Doc. 46-6 at 7). She had received her Master of Science in Wildlife and Fisheries Science from the University of Tennessee in 2002, and her bachelor's degree from North Georgia College with a biology major in 1996. (*Id.*). Dr. Dobey had worked as a terrestrial habitat biologist and wildlife biologist for the Wyoming Game and Fish Department from May 2006 to February 2011 and from January 2005 to May 2006, respectively; a wildlife biologist for an army installation from February 2002 to January 2005; and a wildlife technician for Great Smoky Mountains National Park from May 2001 to February 2002. (*Id.* at 7–9). Her more recent experience appeared to be her summer research positions she held while pursuing her veterinary degree. (*Id.* at 7).

19. At the time the Review Panel made its selection, Dr. Dobey was 41 years of age. (Doc. 46-15 at 1).

20. When reviewing the candidates' application materials, the Review Panel did not use a checklist or other scoring system to make their decision. The only type of ranking available to the Review Panel was the first choice and second choice ranking provided by Dr. McDole and the other regional selecting officials.

21. When considering which candidate would be the best fit for the VMOCP, the Review Panel focused on future leadership potential. The Panel looked for candidates demonstrating an interest above and beyond day-to-day tasks. This included an interest in policy development, an interest in how the USDA operated and set strategic goals, and a flexible approach to where leadership development may lead the candidate in their career.

22. The Review Panel was the final decision maker for each VMOCP position and was not bound by Dr. McDole's or any other regional selecting officials' ranking.

23. Though Dr. Green was Dr. McDole's first ranked choice, the Review Panel found that Dr. Green failed to demonstrate his fitness for and interest in the leadership program. Based on Dr. Green's statement that he wanted "to finish [his] career, and then retire, in the state of Wyoming," the Panel concluded that Dr. Green was uninterested in pursuing a position beyond the one located in Riverton, Wyoming.

24. The Review Panel, specifically Dr. Myers, further found that Dr. Green's choice to apply as an external candidate—a widespread and more competitive candidate pool—indicated his priority to solely move to Wyoming, not to move up in the agency.

25. The Review Panel interpreted Dr. Green's statements about remaining in Wyoming to mean that he had little desire for development or flexibility to make a geographical move if a leadership position opened elsewhere.

26. The Review Panel ultimately selected Dr. Dobey for the Riverton, Wyoming position.

27. Among the 17 successful VMOCP candidates, the Review Panel selected three candidates older than Dr. Green. (Doc. 46-15 at 1).

28. Dr. Green, however, was the only "first-ranked" choice that was not selected by the Review Panel.

***Requested Relief***

29. In his case in chief, Dr. Green did not explain or demonstrate how he was harmed, or even if he was harmed, by the Panel's selection. However, as documented in the pretrial order, he has requested the following relief: (a) a retroactive promotion, with back pay starting from August 1, 2017, to a field VMO position at the GS-13 level for one year and then at the GS-14 level to present, with a remote duty station of his choosing; (b) compensatory damages

in the amount of all Illinois and Montana state income taxes paid by Dr. Green and his wife for the 2016 tax year to present day; (c) declaratory relief restraining further acts of discrimination by the Government; (d) declaratory relief in the form of an email declaration to everyone in Veterinary Services, with wording approved by Dr. Green, that the Government's practices as alleged herein are illegal because they discriminate on the basis of age; (e) reimbursement of all moving expenses incurred by Dr. Green while relocating from his current residence to his new duty station; (f) a government owned vehicle provided to Dr. Green upon his arrival in Wyoming of the type and trim level approved by Dr. Green; (g) an additional 5% of the total backpay in the form of matching funds to Dr. Green's Thrift Savings Plan account; (e) and for all such other and further relief as the Court may deem just, proper, and equitable. (Doc. 39 at 4–5).

## CONCLUSIONS OF LAW

*Jurisdiction*

1. This Court has subject matter jurisdiction because Dr. Green's claim arises under the United States' Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a. 28 U.S.C. § 1331.

2. Venue is proper because Dr. Green resided in Custer County, Montana at the time the lawsuit commenced. 29 U.S.C. § 633a; D. Mont. L.R. 3.2.

### *In General*

3. The federal-sector provision of the ADEA, provides that "[all] personnel actions" affecting individuals aged 40 and older "shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a).

4. As interpreted by the United States Supreme Court, the ADEA requires that federal personnel actions be "untainted" by any consideration of age. *Babb v. Wilkie*, 589 U.S. 399, 402 (2020).

5. Thus, for federal employees, age need not be a "but-for" cause of an employment decision for there to be a violation of the ADEA. *Id.* at 411–13. Rather, a federal employee is entitled to relief upon a showing of being "subjected to unequal consideration." *Id.*

6. If the federal employee makes such a showing of "unequal consideration," the court may grant injunctive or "other forward-looking relief." *Id.* at 414.

7. However, to obtain "reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision," a federal employee must show age was a "but-for" cause of the employment decision. *Id.* at 413.

### *Age Discrimination Claim*

8. To prove a case of discrimination in the context of the federal government's failure to hire, a plaintiff must show by a preponderance of evidence: (1) they

were at least 40 years old at the time of the alleged discrimination; (2) they were subject to an adverse personnel action; and (3) age was a factor in the decision-making process. *Id.* at 400.

9. A "personnel action" includes most employment-related decisions, "such as appointment, promotion, work assignment, compensation, and performance reviews." *Id.* at 405.

10. To comply with the federal-sector ADEA, personnel actions must be "free from" or "untainted" by discrimination based on age. *Id.* Discrimination carries its normal definition, which is "differential treatment." *Id.* (internal quotations omitted).

11. "If age plays any part in the way a decision is made, then the decision is not made in a way that is untainted by such discrimination." *Id.* at 406. In other words, if age plays a role in how a decision is made, such as being a factor in scoring or evaluation, the personnel action is not "free from any discrimination based on age," regardless of whether the ultimate decision would have been the same absent age discrimination. *Id.* at 406–07; 29 U.S.C. § 633a(a).

12. When the Review Panel issued its decision for the Riverton, Wyoming VMOCP position, Dr. Green was 52 years old and therefore, at least 40 years of age at the time of the alleged discrimination.

13. The Review Panel's hiring decision as to the VMOCP was a personnel action because it involved assigning someone to a federal government employment position. It was also an adverse decision to Dr. Green because he was not selected for the position.

14. However, Dr. Green provided no facts in his case in chief demonstrating that age played a role in the Review Panel's decision. Rather, through the credible testimonies of Dr. Sifford, Dr. Myers, and Dr. Levings, the Government demonstrated that age was not a factor in the Review Panel's decision.

15. The Review Panel did not know of nor have access to the candidates' ages. Although the Review Panel could speculate as to the candidates' ages from transcript graduation dates, they did not score, or rank candidates based on graduation timing or accumulated experience. In fact, there was no ranking system outside of the top two choices provided by Dr. McDole and other regional selecting officials.

16. The Review Panel determined that Dr. Green had valuable field work experience, replete with supervisory and leadership roles. However, Dr. Green ultimately took himself out of the running for the VMOCP position when he expressed his intent to remain in Wyoming.

17. Dr. Green's statement about wanting "to finish [his] career, and then retire, in the state of Wyoming," raised concerns for the Review Panel about his

willingness to move up in the agency and relocate if needed. Dr. Green was willing to leave Illinois, but his application indicated he intended to make only one more move—to Wyoming. For the Panel, a candidate's willingness to relocate was integral to the VMOCP in order to meet the agency's need to fill high-ranking positions throughout the country. Because Dr. Green's application expressed an intent not to relocate, the Panel decided he would not be the best fit for the program.

18. The Review Panel received only the top two candidates from each regional selection officer. Despite how the regional selection officer ranked the candidates, the Review Panel had final say. It was axiomatic that the Panel would choose the second-ranked candidate if the first-ranked candidate did not meet the program's needs and purposes. Therefore, because Dr. Green did not meet the program's needs and purposes, the Review Panel chose the "second choice" candidate.

19. Although Dr. Green was the only "first choice" candidate not selected for the VMOCP position, the final selections demonstrate that age was not a factor in the Review Panel's decision, as three other finalists were older than Dr. Green at the time of selection.

20. Because Dr. Green did not present evidence demonstrating that the Review Panel's decision was tainted by an unequal consideration of his age, the Court

cannot infer that the Review Panel's decision was a product of age discrimination.

21. Ultimately, Dr. Green did not meet his burden of proof and therefore, failed to show that the United States, acting through the Department of Agriculture, APHIS, discriminated against him on the basis of his age.

### *Requested Relief*

22. "It is bedrock law that 'requested relief' must 'redress the alleged injury.'" *Babb*, 589 U.S. at 413 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)).

23. Thus, to obtain "reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision," a plaintiff must show age was a "but-for" cause of the employment decision. *Id.*

24. If a plaintiff demonstrates only that they were subjected to unequal consideration, the Court may grant injunctive and "other forward-looking relief." *Id.* at 413–14.

25. In any case, "[r]emedies should not put a plaintiff in a more favorable position than he or she would have enjoyed absent discrimination." *Id.* at 414.

26. Dr. Green presented no evidence of damages at trial and therefore, there is no record evidence for the Court to consider outside of the final pretrial order.

27. However, because Dr. Green has neither shown that age was the "but-for" cause of APHIS's employment decision nor that he was subjected to unequal consideration, the Court cannot grant Dr. Green's requested relief.

## ORDER

IT IS HEREBY ORDERED that:

1. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court finds in favor of Defendant Brooke L. Rollins, Secretary, U.S. Department of Agriculture, because Plaintiff Clinton E. Green has not shown by a preponderance of the evidence that age played a role in the Review Panel's decision-making process.

2. The Clerk is directed to enter judgment under Rule 58 of the Federal Rules of Civil Procedure in favor of Brooke L. Rollins and against Clinton Green.

3. The parties shall bear their own costs and attorney's fees.

DATED this 29th day of July, 2025.

SUSAN P. WATTERS
United States District Judge